UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LEROY LENARD WATSON,

    Plaintiff,

v.                                                      Case No. 3:19-cv-771-J-34PDB

OFFICER H. R. SULLIVAN, et al.,

    Defendants.
_____

## ORDER

### I.    Status

Plaintiff Leroy Watson, an inmate in the custody of the Florida Department of Corrections, initiated this action on April 3, 2019,[1] by filing a pro se Civil Rights Complaint (Complaint; Doc. 1) pursuant to 42 U.S.C. § 1983. In the Complaint, Watson names as defendants the Jacksonville Sheriff's Office (JSO), H.R. Sullivan, and E.M. Megela (Defendants). Watson asserts that Sullivan and Megela (Officers) illegally seized him and used excessive force prior to arresting him. As relief, Watson seeks monetary damages. Before the Court is Defendants' Motion to Dismiss with Prejudice and Memorandum of Law (Motion; Doc. 15), filed on October 21, 2019. Plaintiff filed a response in opposition. See Plaintiff's Response to Defendants' Motion to Dismiss with Prejudice and Memorandum of Law (Response; Doc. 16), with exhibits. The Motion is ripe for review.

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

## II. Watson's Allegations

In his verified Complaint, Watson states that:

> On August 27, 2018 [at] approximately 11:20 p.m., plaintiff was riding his brother's bike to the store to get meds for his daughter. Two police officers (Officer H. R. Sullivan #76558 and Officer E. M. Megela #76499) approached plaintiff and flagged him down, and plaintiff complied. Upon getting off of the bike, Officer Sullivan stated to the plaintiff that he stopped him due to the improper lights on the bike (which the plaintiff had no lights) at the hours of darkness. Officer Sullivan inquired as to whether plaintiff had any drugs or weapons on his person before he dispatched to HQ to check for capias or warrants. Plaintiff stated that he did not possess either drugs or weapons and began to lift his shirt to assure the officers of their safety. Before plaintiff could lift his shirt, officers rushed the plaintiff simultaneously grabbing and punching the plaintiff hard enough to draw blood and injure plaintiff's nose, arms, writs, and head. Plaintiff was charged with "Resisting Arrest (an officer without violence to his or her person) and taken to Shand's Hospital Emergency Room. Once arriving, the nurse and doctors questioned about plaintiff's ribs and the Defendants admitted and bragged about ("beating on them"). Plaintiff was then escorted to the county jail charged with a 1st degree misdemeanor. At first appearance court the Judge sentenced plaintiff to time served on August 28, 2018, yet plaintiff was not released until August 31st, 2018. Plaintiff complains that his beating by the two officers was [unnecessary] and no weapons or drugs were found. Officers could have easily drawn their weapons and order plaintiff to the ground. Plaintiff never attempted to flee and surely that would have been a charge imposed by the officers, but it was not. Plaintiff has prepared a civil complaint herein against both defendants and the agency which employs them.

Complaint at 5-8. Watson maintains that he suffered pain, mental anguish, stress, and physical abuse, including a laceration to the top of his nose and cuts to the side of his head and on both arms and wrists. Id. at 3, 5.

### III.     Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]"

which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give the court a license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Alford v. Consol. Gov't of Columbus, Ga., 438 F. App'x 837, 839 (11th Cir. 2011)[2] (quoting GJR Invs., Inc. v. Cty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), overruled in part on other grounds as recognized in Randall, 610 F.3d at 706).

### IV.     Claims Against JSO

Relying on Monell v. Department of Social Services, 436 U.S. 658 (1978), Defendants argue that Watson has failed to allege that an official government policy, custom, or practice was the moving force behind the alleged constitutional violation. Motion at 9-10. Watson contends that he has sufficiently established that JSO is liable because JSO failed to prevent the Officers from using excessive force. Response at 6. Under Florida law, a sheriff's office is not a separate legal entity with the capacity to be sued. See Faulkner v. Monroe County Sheriff's Dept., 523 F. App'x 696, 700-01 (11th Cir.

---

[2] "Although an unpublished opinion is not binding . . . , it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

4

2013) (noting that "Florida law has not established Sheriff's offices as separate legal entities with the capacity to be sued."). As such, Monell is inapplicable here. See Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992) ("The question here is not whether the Jefferson County Sheriff's Department is a 'person' for the purposes of liability under Monell and section 1983, but whether the Department is a legal entity subject to suit."). In Dean, the Eleventh Circuit held that the district court did not err in dismissing § 1983 claims against a sheriff's office despite the plaintiff's contention that the sheriff's office was liable under Monell. Id. Accordingly, JSO is due to be dismissed as a Defendant from this action because it is not a legal entity capable of being sued.

## V.     Claims Against the Officers

In the Motion, Defendants argue that the Court should dismiss the Complaint with prejudice. Motion at 1. Defendants maintain that Watson's arrest did not violate the Fourth Amendment because Watson concedes in his Complaint that he did not have a light on his bike while driving at night, which is a traffic violation under Florida law. Id. at 3-4. Regarding Watson's allegations that the Officers used excessive force, Defendants note that Watson stated in the Complaint that he lifted his shirt up after the Officers asked him if he had drugs or weapons on his person. Id. at 5. Defendants contend that the police report, attached to the Complaint, corroborates Watson's allegation in that the Officers reported that they observed Watson reaching for his waistband. Id. According to Defendants, "[w]hen Plaintiff reached towards his waistband to lift his shirt, the Officers believed that Plaintiff was reaching for a weapon." Id.

While Defendants acknowledge that Watson disputes the Officers' allegation in the police report that he attempted to flee, Defendants point out that Watson does not dispute

other facts outlined in the report including that: (1) Watson tensed both arms and tucked them under his body towards his waistband; (2) Watson failed to comply with multiple "stop resisting" commands until the Officers struck his body multiple times; and (3) during the struggle, Watson grabbed and pulled a radio microphone attached to one of the Officers' chests, which kept the Officers from informing dispatch of the situation. Id. In light of the totality of the circumstances, Defendants assert that a reasonable officer in the Officers' position would have used the same degree of force to prevent a suspect from accessing a potential weapon and to effectuate the arrest. Id. at 6-7. Likewise, Defendants aver that they are entitled to qualified immunity because they did not violate a clearly established constitutional right. Id. at 7-9.

In his Response, Watson contends that he never made any threatening movements, did not pose an immediate threat to the safety of the Officers, and did not attempt to run away. Response at 2. Additionally, he claims the Officers failed to include the following information in the police report: (1) that he had a small yellow flashlight attached to the front of his handlebars; and (2) the Officers never asked him for his identification card, despite the fact JSO policy required them to do so. Id. at 2. Watson also alleges that the Officers fabricated the following portions of the police report: (1) Watson jumped off his bike and attempted to flee on foot;[3] (2) Watson resisted; (3)

---

[3] Watson asserts that Sullivan's body camera footage would prove that he complied with Sullivan's command to pull over his bicycle and Watson put the bike on the ground. Response at 2. After that, Watson and Sullivan had a conversation concerning why Watson had not pulled over sooner, where Watson was headed, and why he had no light on his bike. Id. at 2-3. According to Watson, he was calm and cooperated throughout the stop, but Sullivan acted aggressively. Id. at 3. After Watson answered the Officers' questions, he noticed that Sullivan had placed his hand on his gun and the Officers were inching towards him, at which point Watson "used both hands using only the thumb and index finger to lift the front of his shirt to show officers that he didn't have a weapon." Id.

6

Watson tried to grab Sullivan's radio; 4) Watson injured his nose on the ground; and 5) Watson had to be treated at a hospital for his injuries. Id. at 2-3, 6. Watson maintains the Officers handcuffed him in such a rough manner that his wrists were cut and his hands were turning blue. Id. at 4. Watson states that Fire and Rescue examined him at the scene and left. Id. According to Watson, the Officers wrote the police report in this manner so as to cover up their actions. Id. Notably, Watson admits that the Officers ran his name and discovered that he was on probation and had a curfew. Id. Regarding Defendants' contention that they are entitled to qualified immunity, Watson asserts that the facts as alleged establish a violation of clearly established law under Fourth Amendment jurisprudence. Id. at 5. Watson also contends that he never committed a crime, only a traffic violation, which would not justify the force they used on him, particularly because he never attempted to flee and he complied with all commands. Id.

"In order to prevail on a civil rights action under § 1983, a plaintiff must show that he or she was deprived of a federal right by a person acting under the color of state law." See Griffin v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001). Although Watson has not specifically identified what federal right Defendants allegedly violated, based on the context of his argument, Watson appears to be contending that Defendants are liable under § 1983 because they violated his rights under the Fourth Amendment. Complaint at 12. The Fourth Amendment to the United States Constitution provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation,

---

at 3. Officers then tackled Watson; however, Watson maintains that he curled up to absorb the hits and did not resist as the Officers excessively beat him. Id.

> and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. A traffic stop constitutes a seizure for Fourth Amendment purposes. Brendlin v. California, 551 U.S. 249, 255 (2007). However, the inquiry is not simply whether a suspect has been seized, but whether the seizure was unreasonable. Beshers v. Harrison, 495 F.3d 1260, 1266 (11th Cir. 2007). A traffic stop is reasonable if it is based upon probable cause or supported by reasonable suspicion in accordance with Terry v. Ohio, 392 U.S. 1 (1968). See United States v. Harris, 526 F.3d 1334, 1337 (11th Cir. 2008).

The Court notes that "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." Graham v. Connor, 490 U.S. 386, 395 (1989) (emphasis in original). The reasonableness standard requires a court to balance the nature and quality of the intrusion on an individual's Fourth Amendment interests and the governmental interest at play. Id. at 396. This standard is objective and applied on a case by case basis, examining the alleged actions through the perspective of how a reasonable officer would respond in the same situation. Id. at 396-97. The following factors are relevant to a court's reasonableness determination: (1) "the severity of the crime at issue[; (2)] whether the suspect poses an immediate threat to the safety of the officers or others[; (3)] and whether he is actively resisting arrest or attempting to evade arrest by flight;" id. at 396; "'[(4)] the need for the application of force[; (5)] the relationship between the need and amount of force used[;] and [(6)] the extent of the injury inflicted.'" Draper v. Reynolds, 369 F.3d 1270, 1277-78 (11th Cir. 2004) (quoting Lee v. Ferraro, 284 F.3d 1188, 1198 (11th Cir.

2002)). Notably, such a reasonableness determination must give "allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Graham, 490 U.S at 396-97. This is particularly true in cases involving traffic stops, because "traffic stops are 'especially fraught with danger to police officers'" and officers may take "'unquestioned command of the situation.'" Arizona v. Johnson, 555 U.S. 323, 330 (2009) (quoting Michigan v. Long, 463 U.S. 1032, 1047 (1983); and Maryland v. Wilson, 519 U.S. 408, 414 (1997)).

Regarding the role of police reports attached to a complaint, the Eleventh Circuit has explained:

> It is true that documents attached to a complaint or incorporated in the complaint by reference can generally be considered by a federal court in ruling on a motion to dismiss under Rule 12(b)(6). See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007). Here, however, Mr. Saunders expressly alleged in his complaint that the police reports that were submitted failed to properly and correctly document the excessive force inflicted on him and the injuries he suffered. Where a civil rights plaintiff attaches a police report to his complaint and alleges that it is false, as Mr. Saunders did, the contents of the report cannot be considered as true for purposes of ruling on a motion to dismiss. Otherwise, officers sued under § 1983 could just attach police reports referenced in a civil rights complaint to their motions to dismiss and ask courts to consider the contents of those reports even if they contradicted the allegations of the complaint. And that, as we have said, would be improper. See Fuller v. SunTrust Banks, Inc., 744 F.3d 685, 695-96 (11th Cir. 2014) ("In general, we do not consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss [under Rule 12(b)(6) ]. This [C]ourt recognizes an exception, however, in cases in which [1] a plaintiff refers to a document in [his] complaint, [2] the document is central to [his] claim, [3] its contents are not in dispute, and [4] the defendant

9

> attaches the document to its motion to dismiss.") (emphasis added and internal quotation marks and citations omitted).

Saunders v. Duke, 766 F.3d 1262, 1270-71 (11th Cir. 2014). Here, although Watson did not explicitly state in the Complaint that the arrest and booking report contained false information, his allegations unequivocally reflect a dispute between his description of what occurred the night of the incident and the contents of the police report. For instance, Watson alleges he did not flee, while the arrest report states that he did flee. Additionally, Watson maintains that the Officers tackled him after he lifted his shirt up, but the arrest report states that the Officers tackled Watson because he fled upon first meeting them. The Court also notes a dispute between the injuries Watson alleged in the Complaint and those described in the police report, as well as the treatment Watson received for his injuries. Accordingly, the Court finds that Watson did not adopt the facts of the arrest report simply because he attached it to his Complaint, particularly where his allegations contradict the contents of the police report. As such, the Court is left to examine the facts as alleged within the four corners of the Complaint.

In his Complaint, Watson alleges that Sullivan told him that he pulled Watson over because of an improper light on his bike, but Watson maintains that "the plaintiff had no lights." Complaint at 12. In his Response to the Motion, Watson now asserts that he had a small yellow flashlight that he placed on the handlebars of his bike to illuminate his path. Response at 2. However, in resolving a motion to dismiss, the Court limits its consideration to the facts as alleged in the operative complaint. See Sticher v. Indymac Fin. Servs., Inc., No. 1:13-CV-3961-RLV, 2014 WL 12284025, at *1 (N.D. Ga. Mar. 7, 2014) (noting that "it is well-established that a party cannot amend his or her complaint via legal argument in a response brief."); Lickerish, Ltd. v. Z Lifestyle, No. 18-80572-CIV,

2018 WL 8264631, at *2 (S.D. Fla. July 12, 2018) (noting that "when evaluating a motion to dismiss, this Court looks to the facts alleged in the complaint, not the arguments in the plaintiff's response."). Accordingly, for purposes of resolving the Motion, the Court accepts Watson's allegation set forth in the Complaint that he did not have a light on the bike he was riding at night when he was stopped. Pursuant to Florida Statutes section 316.2065(7), "[e]very bicycle in use between sunset and sunrise shall be equipped with a lamp on the front exhibiting a white light visible from a distance of at least 500 feet to the front and a lamp and reflector on the rear each exhibiting a red light visible from a distance of 600 feet to the rear." Because Watson affirmatively alleges that he had no such light, the facts as alleged in the Complaint establish that the Officers had probable cause to conduct a traffic stop of Watson. See Harris, 526 F.3d at 1337; § 316.2065(7), Fla. Stat. As such, to the extent Watson claims he was illegally stopped, he has failed to state a claim for relief and Defendants' Motion is due to be granted on this issue.

The Court next turns to Watson's allegation that the Officers used excessive force. Watson contends that the Officers asked him if he had any guns or drugs, after which Watson began to lift his shirt to show the Officers that he had nothing on his body. Complaint at 12. According to Watson, before he was able to lift his shirt up, the Officers rushed him and started to punch and grab him. Id. In the Response, Defendants maintain that an objectively reasonable officer in Defendants' position could have viewed Watson's action of beginning to lift his shirt as a potentially threatening gesture as weapons are commonly secured around the waist. However, at this the motion to dismiss stage of the proceedings, the Court must view the facts in the light most favorable to Watson who contends he simply sought to assure the Officers of their safety. Moreover, Watson

11

alleges that the Defendant Officers punched him hard enough to draw blood, injured his nose, arms, wrist, and head requiring emergency hospital care, and later bragged about having beaten him. Given that Watson alleges that he complied with all orders and told the Officers he did not have any weapons, and only raised his shirt to ensure the Officers of their safety, his description of the force used is sufficient to state a plausible claim of excessive force. Indeed, nothing in the Complaint suggests that Watson appeared violent, or that the situation was tense or that Watson was resisting or otherwise obstructing the Officers' investigation. Accordingly, accepting as true Watson's factual allegations and drawing all reasonable inferences in favor of Watson, the Court finds that Watson has alleged a plausible claim that Defendants violated his constitutional rights. See Runge v. Snow, 514 F. App'x 891, 895 (11th Cir. 2013) ("As we have held on numerous occasions, the gratuitous use of force when a criminal suspect is restrained and not resisting arrest constitutes excessive force.") Therefore, the Motion is due to be denied as to Defendants' contention that their conduct, as alleged in the Complaint, would not support a § 1983 claim.

Likewise, Defendants' claim of qualified immunity also fails. The Court notes that "while the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be . . . raised and considered on a motion to dismiss." St. George v. Pinellas Cty., 285 F.3d 1334, 1337 (11th Cir. 2002) (citing Chesser v. Sparks, 248 F.3d 1117, 1121 (11th Cir. 2001)). "Generally speaking, it is proper to grant a motion to dismiss on qualified immunity grounds when the 'complaint fails to allege the violation of a clearly established constitutional right.'" Corbitt v. Vickers, 929 F.3d 1304, 1311 (11th Cir. 2019) (quoting St. George, 285 F.3d at 1337). A plaintiff bears the burden of overcoming a

qualified immunity defense and must establish that a defendant violated a constitutional right and show that violated right was clearly established. Id. (citing Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1199–1200 (11th Cir. 2007). For the reasons already discussed above, the Complaint alleges a plausible violation of a clearly established constitutional right. See Runge, 514 F. App'x at 895. Accordingly, the Motion is due to be denied without prejudice as to Defendants' contention that they are entitled to qualified immunity.

In consideration of the foregoing, it is now

**ORDERED**:

1. Defendants' Motion to Dismiss (Doc. 15) is **GRANTED in part and DENIED in part**. The Motion is granted to the extent that Defendant JSO and Watson's claim that the traffic stop was unconstitutional are dismissed with prejudice. The Motion is denied with regard to Watson's claims of excessive force against the Officers.

2. The Clerk shall terminate JSO as a Defendant and make the appropriate notation on the docket.

3. Defendants Sullivan and Megela must file their answers to Watson's Complaint by **May 18, 2020**. Thereafter, the Court will issue a separate order setting deadlines for discovery and the filing of dispositive motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 15th day of April, 2020.

MARCIA MORALES HOWARD
United States District Judge

Jax-8
C:
Leroy Lenard Watson, #290575
Counsel of Record